IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 03-cv-00411-CBS-BNB

UNITED STATES OF AMERICA,
        Plaintiff,
v.

MENTER S. KALEVIK
        a/k/a MENTER STEPHEN KALEVIK
        a/k/a STEPHEN M. KALEVIK
        a/k/a STEPHEN KALEVIK
        a/k/a STEVEN KALEVIK
        a/k/a STEVEN M. KALEVIK
        a/k/a STEPHEN KALEVIK MENTER,
UNION PLANTERS CORPORATION/UNION PLANTERS BANK,
ALLIANCE MORTGAGE COMPANY,
GLOBAL PAYMENTS CHECK RECOVERY SERVICES, INC.,
LYNETTE ANN KALEVIK, and
CHARLES W. STELLTER,
        Defendants.
_____

MEMORANDUM OPINION AND ORDER
_____

    This civil action comes before the court on: (1) Plaintiff United States of

America's ("USA") Motion for Partial Summary Judgment (filed December 15, 2006)

(doc. # 101); and (2) the "United States' Motion for Summary Judgment on its Request

to Foreclose Tax Liens Through Sale of Real Properties and for Order of Sale (filed

February 16, 20070 (doc. # 110)).  On October 3, 2003, the above-captioned case was

referred to the Magistrate Judge to handle all dispositive matters including trial and

entry of a final judgment in accordance with 28 U.S.C. 636(c), Fed. R. Civ. P. 73, and

D.C. COLO. LCivR 72.2.  The court has considered the Motions, the entire case file,

1

the exhibits and declarations, and the applicable law and is sufficiently advised in the premises.

A.      Statement of Undisputed Facts

1.      The USA brought this civil action to reduce to judgment the outstanding federal income tax liabilities assessed against Defendant, Menter S. Kalevik, and to foreclose its federal tax liens against the real property located at 7392 Rainbow Creek Road, Sedalia, Colorado 80135 ("Sedalia Property") and the real property located at 3553 South Emerson Street, Englewood, Colorado 80110 ("Englewood Property").

2.      A delegate of the Secretary of the Treasury made assessments of federal income taxes, penalties, interest and other statutory additions for the 1900, 1991, 1992, 1993, 1994, and 1995 income tax years.

3.      Despite timely notice and demand for payment of these assessments, Mr. Kalevik has neglected, failed, or refused to pay the assessments, and as of September 30, 2006 there remained due and owing on said assessments, with accrued interest and other statutory additions as provided by law, and after subtracting related payments, the following amounts: $8,672.23 for 1990, $39,338.95 for 1991, $8,752.69 for 1992, $204,241.88 for 1993, $162,942.14 for 1994 and $100,907.82 for 1995, for a total amount due of $ 524,855.71.  (*See* Declaration of Maureen Neal in Support of USA's Motion for Summary Judgment (doc. # 113); USA's Exhibit 22 (doc. # 113-2)).

4.      On July 28, 1995, the Internal Revenue Service ("IRS") filed a Notice of Federal Tax Lien against Mr. Kalevik for his federal income tax liabilities for 1988

2

through 1991 with the Clerk and Recorder of Douglas County, Colorado.  (*See* Neal

Declaration; USA's Exhibit 23 (IRS Facsimile Federal Tax Lien Document) (doc. # 113-

3)).

      5.     On October 2, 1995, the IRS filed a Notice of Federal Tax Lien against

Mr. Kalevik for his federal income tax liabilities for 1992 with the Clerk and Recorder of

Douglas County Colorado. (*See* Neal Declaration; USA's Exhibit 24 (IRS Facsimile

Federal Tax Lien Document) (doc. # 113-4)).

      6.     On July 15, 1999, the IRS filed a Notice of Federal Tax Lien against Mr.

Kalevik for his federal income tax liabilities for 1993 through 1995 with the Clerk and

Recorder of Douglas County, Colorado.  (*See* Neal Declaration; USA's Exhibit 25 (IRS

Facsimile Federal Tax Lien Document) (doc. # 113-5)).

      7.     On December 23, 1999, the IRS filed a Notice of Federal Tax Lien against

Mr. Kalevik for his federal income tax liabilities for 1990 through 1995 with the Clerk

and Recorder of Arapahoe County, Colorado.  (*See* Neal Declaration; USA's Exhibit 26

(IRS Facsimile Federal Tax Lien Document) (doc. # 113-6)).

      8.     Mr. Kalevik is the owner of the real property located at 3553 South

Emerson Street, Englewood, Colorado 80110 and legally described as Block 4, Lots 36

& 37, Higgins South Broadway Heights, County of Arapahoe, State of Colorado

("Englewood Property").  (*See* Amended Complaint at ¶13 and Mr. Kalevik's Answer to

Amended Complaint at ¶13).

      9.     Mr. Kalevik is the owner of the real property located at 7392 Rainbow

Creek Road, Sedalia, Colorado 80135 and legally described as Lot 52, Indian Creek

Ranch Filing No.2, County of Douglas, State of Colorado ("Sedalia Property"), and was
the sole owner of this property at the time of his divorce from Lynette Ann Kalevik in
January, 2000.  (*See* Amended Complaint at ¶ 12; Mr. Kalevik's Answer to Amended
Complaint at ¶ 12;  Declaration of James Weaver (doc. # 112); USA's Exhibit 7
(portions of USA's First Set of Interrogatories, Requests for Production of Documents
and Requests for Admissions Directed to Menter S. Kalevik) at p. 10, question 1 (doc. #
112-8)).

10.    A Deed of Trust was filed against the Sedalia Property and recorded with
the Clerk and Recorder of Douglas County, Colorado on January 13, 1987.  (*See*
Weaver Declaration; USA's Exhibit 8 (Mortgage Guarantee from First American Title
Insurance Company for Sedalia Property) (doc. # 112-9)).

11.    The Deed of Trust that recorded on January 13, 1987 was assigned to
Leader Federal Bank for Savings.  Defendant Union Planters Bank, National
Association a/k/a Union Planters Bank, N.A. ("Union Planters") is the successor by
merger with Leader Federal Bank for Savings.  (*See* Weaver Declaration; USA's Exhibit
9 (Assignment of Deed of Trust) (doc. # 112-10)).  Union Planters executed a
disclaimer of interest in this matter because it had sold its interest in the Deed of Trust
on the Sedalia Property to Defendant Alliance Mortgage Company ("Alliance").  (*See*
Disclaimer of Interest of Union Planters Mortgage (filed December 4, 2003) (doc. # 43);
Weaver Declaration; USA's Exhibit 9 (doc. # 112-10)).  Alliance, as the current lien
holder of the Deed of Trust filed on the Sedalia Property on January 13, 1987, has a
lien that is prior to that of the United States on the Sedalia Property.  The USA and

4

Alliance have entered into a Stipulation that any proceeds from a foreclosure of the

Sedalia Property "should first be paid to Alliance Mortgage Company for the balance

due on the debt secured by the Deed of Trust, as of the day of the sale, along with its

reasonable attorney's fees associated with the defense of this action."  (Stipulation

Between the United States of America and Alliance (filed March 12, 2004) (doc. # 60)

at ¶ 7).  "The attorney's fees will not accrue interest and will not exceed one thousand

dollars ($1,000.00)."  *Id.*

12.    Defendant Lynette Kalevik, who is also shown as an owner of the Sedalia

Property on the mortgage guarantee, has executed a Disclaimer of Interest in this

matter.  (See Disclaimer of Interest of Lynette Ann Kalevik (filed December 4, 2003)

(doc. # 44)).  Any interest that Ms. Kalevik has in certain court-awarded personal

property as a result of her divorce from Mr. Kalevik does not implicate the USA's

interest in or Ms. Kalevik's Disclaimer of Interest in the Sedalia property.

13.    In June, 1994, Choice Recovery Network, Inc. filed with the Clerk and

Recorder of Douglas County, Colorado a judgment that had been obtained against Mr.

Kalevik on March 8, 1995.  (*See* Weaver Declaration;  USA's Exhibit 8 (doc. # 112-9)).

There have been several name changes and/or trade names related to Choice

Recovery Network.  DaJoy Enterprises, Inc., registered Choice Recovery as its

trademark with the Colorado Secretary of State on February 8, 1994.  (*See* Weaver

Declaration;  USA's Exhibit 10 (documents obtained from the website of the Colorado

Secretary of State regarding the predecessor names, trade names and/or alternate

names of Defendant Global Payments Check Recovery Services, Inc.) (doc. # 112-11)).

5

Articles of Merger showing a merger of DaJoy Enterprises, Inc. into Check Rite, Ltd. were filed with the Colorado Secretary of State on February 23, 1996.  (*See* USA's Exhibit 11 (doc. # 112-12)).

14.    Check Rite, Ltd. does business as Choice Recovery Network.  CheckRite Recovery Services, Inc. also did business as Choice Recovery.  Check Rite, Ltd. and CheckRite Recovery Services, Inc. share the same address.  (*See* USA's Exhibits 10, 12 (docs. # 112-11, # 112-13)).  CheckRite Recovery Services, Inc. changed its corporate name to Global Payments Check Recovery Services, Inc. ("Global Payments").  (*See* USA's Exhibit 13 (doc. # 112-14)).  Global Payments is a Defendant in this action.

15.    Global Payments does business as CheckRite.  (*See* USA's Exhibit 14 (doc. # 112-15)).  A letter was sent from CheckRite to the IRS, dated November 1, 2001, and signed by an authorized agent for Choice Recovery Network, Inc., stating that the judgment obtained in 1994 is beyond Colorado's statute of limitations and was not extended.  (*See* Weaver Declaration;  USA's Exhibit 15 (doc. # 112-16)).

16.    After having been properly served with process, Global Payments failed to make an appearance in this matter, and on March 2, 2004, the Clerk of the Court entered default against it.  (*See* USA's Second Request for Entry of Default Against Global Payments Check Recovery Services, Inc. and attached Certificate of Service (filed March 2, 2004) (doc. # 51);  Affidavit of Cindy A. Bouldin (filed March 2, 2004) (doc. # 52);  Declaration of Anita Machhar in Support of United States' Second Request for Entry of Default Against Global Payments Check Recovery Services, Inc, and

6

attachments (filed March 2, 2004) (doc. # 53);  Entry of Default (filed March 2, 2004) (doc. # 54)).

17.     A Deed of Trust dated January 16, 1974, was filed by Defendant Charles W. Stellter against the Englewood Property and recorded with the Clerk and Recorder of Arapahoe County, Colorado on January 25, 1974.  (*See* Weaver Declaration;  USA's Exhibit 16 (Mortgage Guarantee from First American Title Insurance Company for Englewood Property) (doc. # 112-17)).  The Deed of Trust issued by Mr. Kalevik to Stellter secures a promissory note showing that Mr. Kalevik borrowed $12,500.00 from Stellter, to be paid with 8.5% interest per annum, in monthly installments of $109.48. (*See* Weaver Declaration;  USA's Exhibit 17 (Deed of Trust) (doc. # 112-18)).  The Deed of Trust does not show the date final payment on the loan was due or whether the interest is to accrue as simple interest or daily, monthly or yearly compounding interest. (*See* USA's Exhibit 17 (doc. # 112-18)).  The debt underlying the promissory note is almost completely or completely paid.  (*See* Affidavit of Norma Osmon and Marjorie Ann Nalker (attached to doc. # 40) at ¶¶ 4 and 5).  Stellter did not assign Mr. Kalevik's debt to Ms. Osmon or Ms. Nalker.  (*See id.* at ¶ 6).  Ms. Osmon and Ms. Nalker are not aware of anyone else to whom Stellter may have assigned Mr. Kalevik's debt.  (*See id.* at ¶ 7).

18.     Charles Stellter died in September, 1981.  (*See* Weaver Declaration; USA's Exhibit 18 (Social Security Administration record); Affidavit of Norma Osmon and Marjorie Ann Nalker (attached to doc. # 40) at ¶ 1)).  Stellter has no surviving wife, and has only two surviving children, Norma Osmon and Marjorie Ann Nalker.  (*See* Affidavit

of Norma Osmon and Marjorie Ann Nalker, at ¶ 2).  Stellter did not leave a will, nor is

there an open estate.  (*See id.* at 3).  Ms. Osmon and Ms. Nalker do not wish to pursue

any interest Stellter may have had in the Englewood Property. (*See id.* at ¶¶  8-10).

19.    The City of Englewood filed a lien against Mr. Kalevik that was recorded

with the Clerk and Recorder of Arapahoe County, Colorado on November 23, 1999 as

Reception No. A9185925.  (*See* Weaver Declaration;  USA's Exhibit 19 (doc. # 112-

20)).  A release of this lien was recorded with the Clerk and Recorder of Arapahoe

County, Colorado on March 27, 2001.  (*See* Weaver Declaration;  USA's Exhibit 19

(letter dated October 31, 2001, from Department of Administrative Services of the City

of Englewood to the IRS, with attached Release of Lien) (doc. # 112-20)).

20.    Tax Lien Sale Certificate No. 0000081232 was filed against the

Englewood Property and recorded with the Clerk and Recorder of Arapahoe County,

Colorado on November 18, 1998.  (*See* Weaver Declaration;  USA's Exhibit 20 (doc. #

112-21)).  A Certificate of Redemption with respect to this tax lien was recorded with

the Clerk and Recorder of Arapahoe County, Colorado on June 26, 2000.  (*See*

Weaver Declaration;  USA's Exhibit 20 (letter dated November 5, 2001 from Office of

the County Attorney of Arapahoe County Colorado to the IRS, with attached Certificate

of Redemption) (doc. # 112-21)).

21.    On October 3, 2003, the USA issued discovery requests, including

Requests for Admissions, to Mr. Kalevik.  Pursuant to Fed. R. Civ. P. 36 and 6(e), the

responses to these requests were due on or before November 5, 2003.  (See Weaver

Declaration; USA's Exhibit 7 (doc. # 112-8)).

22.     On November 4, 2003, Mr. Kalevik's attorney, Erik Morlang, filed a Motion to Withdraw, based on Mr. Kalevik's failure to cooperate and communicate.  Due to the withdrawal of Mr. Kalevik's counsel, the USA consented to extend the time period for Mr. Kalevik to respond to the outstanding discovery requests for an additional thirty (30) days.  (*See* Motion to Withdraw (filed November 7, 2003) (doc. # 36)).

23.     In a Minute Order dated November 10, 2003, the court granted the Motion to Withdraw and ordered Mr. Kalevik to proceed in this matter *pro se* as necessary until the entry of appearance of new counsel.  (*See* doc. # 37).  The court reminded Mr. Kalevik of his obligation to comply with all applicable Federal Rules of Civil Procedure and Local Rules of Practice, and allowed Mr. Kalevik up to and including December 5, 2003 to respond to the USA's discovery requests.  (*See* doc. # 37).  As of this date, the USA has not received any response to its discovery requests, including the Requests for Admissions and no new counsel has entered an appearance on behalf of Mr. Kalevik.  Mr. Kalevik has thus effectively admitted that the assessments were properly made and that he owes the balances due on the assessments.  (*See* Weaver Declaration; USA's Exhibit 7 (doc. # 112-8)).

24.     The USA filed a Motion for Summary Judgment on March 3, 2004 (doc. # 55).  Mr. Kalevik did not respond to that Motion.  The court held a hearing on the USA's Motion on May 20, 2004.  Counsel for the USA appeared in person.  Mr. Kalevik did not appear in person or through counsel.  The hearing was set by Minute Order dated April 21, 2004.  (*See* doc. # 63).  A copy of the Minute Order was mailed to Mr. Kalevik at his most recent address on record with the court.  (*See* doc. # 63). The court's records

9

indicate that the Minute Order mailed to Mr. Kalevik was not returned as undeliverable.

25.     Later in the day on May 20, 2004, the court received Mr. Kalevik's Notice of Bankruptcy (doc. # 64), indicating that on May 19, 2004 Mr. Kalevik filed Case No. 04-20792 ABC, a voluntary petition under Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Colorado.  This civil action was therefore stayed (*see* Title 11 U.S.C. § 362 (a petition filed under section 301 of Title 11 operates as a stay of the continuation of a judicial action against the debtor)).  Notice was filed on November 4, 2004 that Case No. 04-20792 ABC had been dismissed on October 13, 2004 on the grounds that no plan was confirmed.  (*See* doc. # 72).

26.     The court lifted the stay on November 9, 2004.   The court held a status conference on December 21, 2004.  Counsel for the USA appeared via telephone.  Mr. Kalevik did not appear in person or through counsel.

27.     Later on December 21, 2004, the court received Mr. Kalevik's Notice of Bankruptcy (doc. # 75), indicating that on December 20, 2004 Mr. Kalevik filed Case No. 04-37326 ABC, a voluntary petition under Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Colorado.  As a result of the filing of the Chapter 13 Petition, this civil action was again stayed.

28.     On September 15, 2005, the court administratively closed this civil action based on inactivity due to the filing of two bankruptcy petitions that stayed proceedings in this case from May 19, 2004 through October 13, 2004 and from December 20, 2004 through October 5, 2005.  (*See* Order Administratively Closing Case (filed September

15, 2005) (doc. # 77)).  The court indicated that this civil action was subject to reopening for good cause and that should the action be reopened for good case, it would be "reinstated in full in the same posture in which it was on the date of this Order, including the USA's Motion for Summary Judgment (filed March 3, 2004) (doc. # 55)." (*See id.*).  On October 14, 2005, the court received notice that Case No. 04-37326 ABC was dismissed on October 5, 2005 on the grounds that Mr. Kalevik failed to make the required payments under the Chapter 13 plan and had failed to file a motion to confirm the plan.  (*See* Exhibits 1 and 2 to doc. # 79).

29.     On November 7, 2005, the court reopened this civil action and reinstated the case "in full in the same posture in which it was on the date of this Order," including the USA's pending Motion for Summary Judgment (filed March 3, 2004) (doc. # 55).  Also on November 7, 2005, the court issued a Memorandum Opinion and Order on the USA's pending Motion for Summary Judgment (doc. # 55).

30.     On November 30, 2005, the court received Mr. Kalevik's Notice of Bankruptcy Proceeding (doc. # 83), indicating that on October 16, 2004 Mr. Kalevik filed Case No. 05-51595-SBB, a voluntary petition under Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Colorado.  As a result of the filing of the Chapter 7 Petition, the court vacated the Memorandum Opinion and Order (doc. # 55) and again stayed this civil action.  (*See* doc. # 84).

31.     On October 17, 2006, the USA moved to reopen this action, based upon an order of discharge in Bankruptcy Case No. 05-51595-SBB.  The court reopened this civil action on October 20, 2006 and set a status conference on November 7, 2006.

11

(*See* doc. # 91).  Mr. Kalevik, counsel for Alliance, and counsel for the USA appeared at the status conference held on November 7, 2006.

32.     The USA filed its Motion for Partial Summary Judgment (doc. # 101) on December 15, 2006.  The USA filed its Motion for Summary Judgment on its Request to Foreclose Tax Liens Through Sale of Real Properties and for Order of Sale (doc. # 110) on February 16, 2007.  Per the court's instructions, the USA filed status reports on February 7, 2007 (doc. # 107), February 14, 2007 (doc. # 109), March 7, 2007 (doc. # 115), March 13, 2007 (doc. # 118), and June  5, 2007 (doc. # 120).

33.     On March 8, 2007, Mr. Kalevik moved for an extension of time to respond to the USA's Motion for Summary Judgment.  (*See* doc. # 116).  The court granted Mr. Kalevik's motion on March 9, 2007, affording Mr. Kalevik until March 28, 2006 to file his response.  (*See* doc. # 117).  To date, Mr. Kalevik has not responded to the USA's Motion for Summary Judgment.

34.     The Sedalia Property and the Englewood Property became part of the Kalevik Bankruptcy Estate upon the filing of the voluntary petition under Chapter 7 in *In Re Kalevik*, No. 05-51595-SBB (Bankr. Colo.).  (*See* Weaver Declaration; USA's Exhibit 21 (doc. # 112-22)).  Mr. Kalevik obtained an order of Discharge of Debtor on March 8, 2006.  (*See id.*).  On March 12, 2007, the United States Bankruptcy Court for the District of Colorado lifted the automatic stay in Case No. 05-51595-SBB, permitting the USA to foreclose tax liens through the sale of two parcels of real estate held in the Kalevik Bankruptcy Estate.  (*See* Exhibit 1 to Supplemental Status Report (doc. # 118-2)).

12

35.     On June 8, 2007, the court noted that some of the USA's and the court's filings may not have been mailed to Mr. Kalevik at his current address.  (*See* doc. # 121).  The court directed the Clerk of the Court to mail of copies of such filings to Mr. Kalevik and set a hearing on all pending matters on June 26, 2007.  (*See id.*).  The court held a hearing on June 26, 2007.  Counsel for the USA, counsel for Alliance, and Mr. Kalevik appeared in person.  The court set June 28, 2007 as the deadline for Mr. Kalevik's response to the USA's Motion for Partial Summary Judgment.  On June 28, 2007, Mr. Kalevik filed a "Motion for Settlement Conference" (doc. # 125).  As of the date of this Order, Mr. Kalevik has not responded to the USA's Motion for Partial Summary Judgment.

B.     Standard of Review

As a result of three bankruptcy petitions filed by Mr. Kalevik (Case No. 04-20792 ABC, Case No. 04-37326 ABC, and Case No. 05-51595-SBB), proceedings in this case have been stayed from May 19, 2004 through October 13, 2004, from December 20, 2004 through October 5, 2005, and from December 5, 2005 to October 20, 2006.  The USA's most recent Motion for Summary Judgment has been pending for approximately 6 months without any response from Mr. Kalevik.  Mr. Kalevik has had ample time to respond to the USA's Motion arguments.

"[A]lthough a district court may consider a motion for summary judgment uncontested for lack of a timely response, it cannot grant summary judgment unless the moving party has met its initial burden of production under Rule 56 and demonstrated

13

that no genuine issue of material fact exists and that it is entitled to judgment as a

matter of law." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation

omitted).

> Under Rule 56(c) summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. For that purpose, familiar Rule 56 principles impose on defendants as movants the initial burden of establishing the lack of a genuine issue of material fact. If that burden is met, plaintiffs as nonmovants must then come forward with specific facts showing that there is a genuine issue for trial. On that score an issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.) (internal quotes and

citations omitted).  The district court is "required to examine all of the evidence and

draw all reasonable inferences in favor of plaintiffs as nonmovants." *Id.*


C.      Conclusions of Law

        1.      Title 26 U.S.C. § 6201(a)(1) authorizes the Secretary of Treasury to make

assessments of all taxes imposed by the Internal Revenue Code.  Certificates of

Assessments and Payments (Forms 4340) are admissible evidence pursuant to Fed. R.

Evid. 803(6) and (8) and are the proper means of establishing the facts of the

administrative assessment, and notice and demand for payment.  *See Long v. United*

*States*, 972 F.2d 1174, 1181 (10th Cir. 1992) ("For purposes of granting summary

judgment, a Certificate of Assessments and Payments is sufficient evidence

that an assessment was made in the manner prescribed by § 6203 and Treas. Reg.

14

301.6203-1");  *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (Form 4340s
are proof that proper notices were sent).  These Certificates are self-authenticating.
*See* Fed. R. Evid. 902(1) and (4).  Because the Forms 4340 submitted here identify Mr.
Kalevik, describe the character of his assessed tax liabilities, state the applicable tax
periods and amounts of the assessments, and are signed by an assessment officer,
they are presumptive proof of the validity of the assessments at issue.  *See Guthrie v.
Sawyer*, 970 F.2d 733, 737 (10th Cir. 1995) (district court correctly concluded that
Certificates of Assessments and Payments showed presumptively correct tax
assessments).  (*See also* USA's Exhibits 1 through 6 (docs. # 112-2 through # 112-7).

In its Requests for Admissions, the USA requested that Mr. Kalevik admit that
the assessments at issue in this matter were properly assessed, and that he owes the
balance due on those assessments.  Mr. Kalevik failed to respond to the USA's
Requests for Admissions, even after receiving additional time to do so.  Pursuant to
Fed. R. Civ. P. 36, Mr. Kalevik is deemed to have admitted the matters set forth in each
Request for Admission, and each such admission is conclusively established.
*Bergemann v. U.S.*, 820 F.2d 1117, 1120  (10th Cir. 1987).  (*See* Weaver Declaration;
USA's Exhibit 7 (doc. # 112-8)).

As there are no material facts in dispute, the USA is entitled to judgment as a
matter of law in its favor and against Mr. Kalevik for the unpaid balance of his federal
income tax assessments for 1990 through 1995.  The USA has moved to reduce tax
assessments against Mr. Kalevik for 1990-91 to judgment, those years that Mr. Kalevik
did not file tax returns.  (*See* USA's Motion for Partial Summary Judgment (filed

December 15, 2006) (doc. # 101)).  The IRS prepared substitutes for returns for those

years and taxes were assessed.  Mr. Kalevik's failure to file returns for tax years 1990

and 1991 precludes him from obtaining a discharge in bankruptcy for the taxes

assessed against him for those two years.  *See In re Bergstrom*, 949 F.2d 341, 343

(10th Cir. 1991) ("An individual's tax liability is nondischargeable in bankruptcy when

the liability results from the individual's failure to file a return").  The USA no longer

seeks to reduce assessments for tax years 1992-95 to judgment.

Notwithstanding Mr. Kalevik's discharge in bankruptcy, the USA may foreclose

its tax liens against Mr. Kalevik through sale of the Sedalia Property and the

Englewood Property, as the Bankruptcy Court has lifted the automatic stay for this

purpose.  (*See* Exhibit 1 to Supplemental Status Report (doc. # 118-2)).  *See also In re*

*Isom*, 901 F.2d 744, 745 (9th Cir. 1990) (while "[a] discharge in bankruptcy prevents

the I.R.S. from taking any action to collect the debt as a personal liability of the debtor,"

the "property remains liable for a debt secured by a valid lien, including a tax lien").

2.      Upon notice and demand for payment, a lien for taxes arises upon "all

property and rights to property, whether real or personal" of a delinquent taxpayer at

the time the assessment is made and continues until the assessed tax liability is

satisfied or becomes unenforceable for lapse of time. 26 U.S.C. §§ 6321 and 6322.

The Forms 4340 submitted in this matter establish that notice and demand for payment

was properly made.  *See Long*, 972 F.2d at 1181 (citing *Gentry v. United States*, 962

F.2d 555, 557 (6th Cir. 1992) (Certificates of Assessments and Payments sufficient

proof of adequacy and propriety of notices and assessments absent evidence to the

contrary)). Generally, a levy may be issued or an action brought in court to collect an assessed liability within ten years from the date of assessment.  26 U.S.C. § 6502.  Mr. Kalevik's federal income tax liabilities for tax years 1990 through 1995 remain unpaid. The earliest assessment at issue in this matter was made on October 17, 1994, and this action was commenced on March 7, 2003, well within the ten year period.

The record demonstrates that Mr. Kalevik owns the Sedalia Property and the Englewood Property and that he was the sole owner of the Sedalia Property at the time of his divorce from Lynette Ann Kalevik in January, 2000.  (*See* Mr. Kalevik's Answer to Amended Complaint at ¶13;  Disclaimer of Interest of Lynette Ann Kalevik (filed December 4, 2003)).[1]  Pursuant to 26 U.S.C. § 6321, the USA has established as a matter of law that its federal tax liens are valid and attach to Mr. Kalevik's interest in the Sedalia Property and the Englewood Property.  The court finds that the federal tax liens with respect to the federal income tax assessments for 1990 through 1995 are valid and attach to the Sedalia Property and the Englewood Property.

3.      The USA's federal tax liens that arose from the assessments in this matter are valid against all creditors without the filing of a notice, except those defined in 26 U.S.C. § 6323.  Pursuant to 26 U.S.C. § 6323(a), a notice of federal tax lien must be

---

[1]      In the pending case in the United States Bankruptcy Court for the District of Colorado, *In re Kalevik*, No. 05-51595-SBB (Bankr. Colo.), Ms. Lynette Ann Sweet [Kalevik] recently filed a proof of claim.  On March 12, 2007, the Bankruptcy Court lifted the automatic stay, permitting the USA to foreclose tax liens through the sale of two parcels of real estate held in the Kalevik estate.   (*See* Exhibit 1 to Supplemental Status Report (doc. # 118-2)).  The priority of the claims of the USA and Ms. Sweet [Kalevik] is a matter that the Bankruptcy Court may resolve in accordance with its retainer of jurisdiction over distribution of the net proceeds of the bankruptcy estate.

filed in order to have priority over the holder of a security interest. The USA filed Notices of Federal Tax Liens in the Clerk and Recorders' offices of the counties in which the Sedalia Property and the Englewood Property are situated.  These Notices were timely filed and re-filed.  (*See* Neal Declaration; USA's Exhibits 23 -26 (docs. # 113-3 through # 113-6)).

The USA named several additional parties as Defendants in this action because they may have an interest in the properties at issue here.  Other than Alliance, no party has an interest that is superior to that of the USA in the Sedalia Property.  Based on the letter from CheckRite/Choice Recovery Network, Inc. to the IRS and Global payments' failure to appear in this action, Global Payments does not have an interest in the Sedalia Property.  (*See* USA's Exhibit 15; Entry of Default (filed March 2, 2004) (doc. # 54); Colo. Rev. Stat. § 13-80-103.5, § 13-80-108, and § 38-39-207 (2003)).  The USA admits that any proceeds generated from the sale of the Sedalia Property shall first be distributed to Alliance for the balance due on the debt secured by the Deed of Trust (USA's Exhibit 9 (doc. # 112-10)), as of the day of the sale, in accordance with the Stipulation Between the United States of America and Alliance (doc. # 60).

The USA's federal tax liens have priority over the interests of all other creditors with respect to the Englewood Property.  Three liens were filed against the Englewood Property prior to the filing of the Notices of Federal Tax Lien.  One lien has been satisfied and another released.  (*See* Weaver Declaration;  USA's Exhibit 16 (doc. # 112-17);  USA's Exhibit 19 (letter dated October 31, 2001, from Department of Administrative Services of the City of Englewood to the IRS, with attached Release of

18

Lien) (doc. # 112-20)).

The date of the deed of trust issued by Mr. Kalevik to Stellter is January 16, 1974.  Liens created by a deed of trust shall not run for more than fifteen years from the date on which final payment or performance is made.  *See* Colo. Rev. Stat. § 38-39-201 (2003);  USA's Exhibit 16 (Mortgage Guarantee from First American Title Insurance Company for Englewood Property) (doc. # 112-17)).  Thus, Stellter's lien has been extinguished.  There is no evidence before the court that Stellter assigned his interest in the Englewood Property to anyone.  Stellter's only surviving heirs do not wish to pursue any interest Stellter may have had in the Englewood Property. (*See* Affidavit of Norma Osmon and Marjorie Ann Nalker, at ¶¶ 8-10).

The Internal Revenue Code provides that in any case where there has been a failure to pay taxes, the United States may file a suit "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property of whatever nature of the delinquent or in which he has any right, title or interest to the payment of such tax. . ." and the court shall "adjudicate all matters involved therein. . . ." 26 U.S.C. § 7403(a), (c). A district court shall and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property . . ." *Id.* at § 7403(c).  As the court has determined that a tax liability exists and the United States' tax liens are valid, the federal tax liens are properly foreclosed to pay Mr. Kalevik's outstanding income tax liability.

D.    Order Granting Partial Summary Judgment

Based upon the foregoing, IT IS ORDERED that:

1.     Plaintiff United States of America's ("USA") Motion for Partial Summary Judgment (filed December 15, 2006) (doc. # 101) is GRANTED and summary judgment shall enter in favor of Plaintiff United States of America and against Defendant Menter S. Kalevik for the unpaid balance due on the federal income tax liabilities assessed against him for tax years 1990 through 1991.

2.     **On or before July 16, 2007**, the USA shall submit to the court evidence of the final amount due.  Upon submission of the final amount due, the Clerk of the Court shall enter judgment.


E.     Order of Sale

Based upon the foregoing, IT IS FURTHER ORDERED that:

1.     The "United States' Motion for Summary Judgment on its Request to Foreclose Tax Liens Through Sale of Real Properties and for Order of Sale (filed February 16, 20070 (doc. # 110)) is GRANTED, subject to the Stipulation and Order entered on March 12, 2007 in *In re Kalevik*, No. 05-51595-SBB (Bankr. Col.).  (*See* docs. # 118, # 118-2, # 118-3).

2.     The federal tax liens (*see* USA's Exhibits 23-26) (docs. # 113-3 through # 113-6) shall be foreclosed and the Sedalia Property and the Englewood Property ("Properties") sold pursuant to 26 U.S.C. § 7403(c) and 28 U.S.C. § 2001, with the proceeds distributed to the USA as required to satisfy the federal tax liens, after paying to Alliance the remaining balance of Mr. Kalevik's loan on the Sedalia Property

20

pursuant to the "Stipulation Between the United States of America and Alliance

Mortgage Company" filed with the court on March 12, 2004 (doc. # 60).

3.      The United States Marshal for the District of Colorado, his representative,

or an Internal Revenue Service Property Appraisal and Liquidation Specialist ("PALS"),

is authorized and directed under 28 U.S.C. §§ 2001 and 2002 to offer for public sale

and to sell the Properties.  The USA may choose either the United States Marshal or a

PALS to carry out the sales of the Properties under this Order and shall make the

arrangements for any sale as set forth in this Order.

4.      The Marshal, his representative, or a PALS representative is authorized

to have free access to the Properties and to take all actions necessary to preserve the

Properties, including, but not limited to, retaining locksmiths or other persons to change

or install locks or other security devices on any part of the Properties, until the deeds to

the Properties are delivered to the ultimate purchasers.

5.      The terms and conditions of the sales of either or both of the Properties

are:

        a.      the sale of the Properties shall be free and clear of the

interests of all parties to this lawsuit;

        b.      the sales shall be subject to building lines, if established, all

laws, ordinances, and governmental regulations (including building and

zoning ordinances) affecting the Properties, and easements and

restrictions of record, if any;

        c.      the sales shall be held at the courthouses of the county or

city in which each of the respective Properties is located, on the

Properties' premises, or at any other place in accordance with the

provisions of 28 U.S.C. §§ 2001 and 2002.  The Properties may be sold

21

separately or as a package at the discretion of the United States Marshal or the PALS handling the sale;

d.      the dates and times for sales are to be announced by the United States Marshal, his/her representative, or a PALS;

e.      notices of the sales shall be published once a week for at least four consecutive weeks before each respective sale in at least one newspaper regularly issued and of general circulation in the respective counties in which each of the Properties is located, and, at the discretion of the Marshal, his/her representative, or a PALS, by any other notice deemed appropriate.  Each notice shall contain a description of the respective property for sale and shall contain the terms and conditions of sale in this order;

f.      minimum bids will be set by the Internal Revenue Service, except that the minimum bid for the Sedalia Property shall not be less than the balance owed to Alliance (now known as EverHome Mortgage) ("Alliance Mortgage") under a deed of trust dated December 23, 1986 and recorded January 13, 1987, unless consent is obtained from counsel for Alliance Mortgage in this case.  If minimum bids are not met or exceeded, the Marshal, his or her representative, or a PALS may, without further permission of this Court, and under the terms and conditions in this order of sale, hold new public sales, if necessary, and reduce the minimum bids or sell to second highest bidders; however, any reduction of the minimum bid for the Sedalia Property must be first approved by counsel for Alliance Mortgage, to the extent that the reduced bid is for less than the balance owed to Alliance Mortgage under the aforesaid deed of trust;

g.      the successful bidder(s) shall be required to deposit at the time of the sale of either of the properties with the Marshal, his/her representative, or a PALS a minimum of $20,000, with the deposit(s) to be made by certified or cashier's check payable to the United States District

22

Court for the District of Colorado.  Before being permitted to bid at the sale, bidders shall display to the Marshal, his/her representative, or a PALS proof that they are able to comply with this requirement.  No bids will be received from any person(s) who have not presented proof that, if they are the successful bidders(s), they can make the deposit required by this order of sale;

h.      the balance of the purchase prices for the Properties are to be paid to the United States Marshall or a PALS (whichever person is conducting the sale) within 20 days after the date the respective bids are accepted, by a certified or cashier's check payable to the United States District Court for the District of Colorado.  If a bidder fails to fulfill this requirement, the deposits shall be forfeited and shall be applied to cover the expenses of the sales, including commissions due under 28 U.S.C. § 1921(c), with any amount remaining to be distributed in accordance with numbered paragraph 7, below. The realty involved shall be again offered for sale under the terms and conditions of this order of sale.

i.      the sales of the Properties shall be subject to confirmation by this court.  The Marshal or a PALS shall file reports of sale with the court, together with proposed orders of confirmation of sales and proposed deeds, within 20 days from the date of receipt of the balance of the purchase prices for the respective properties;

j.      on confirmation of the sales, or either of them, the Internal Revenue Service shall execute and deliver deed(s) of judicial sales conveying the Properties (or either of them) sold to the respective purchasers;

k.      on confirmation of the sales, all interests in, liens against, or claims to, the Properties that are held or asserted by all parties to this action are discharged and extinguished;

l.      on confirmation of the sales, the recorder of deeds for the

23

respective counties involved (Douglas and Arapahoe, Colorado) shall
cause transfer of the respective Properties to be reflected upon that their
registers of title; and

   m.  the sales are ordered pursuant to 28 U.S.C. § 2001, and are
made without rights of redemption.

   5.  Until the Properties are sold, Mr. Kalevik shall take all reasonable steps
necessary to preserve the Properties (including all buildings, improvements, fixtures
and appurtenances on the Properties) in their current condition including, without
limitation, maintaining a fire and casualty insurance policy on the Properties.  He shall
neither commit waste against the Properties nor cause or permit anyone else to do so.
He shall neither do anything that tends to reduce the value or marketability of the
Properties nor cause or permit anyone else to do so.  The Defendants or other parties
claiming an interest in the Properties shall not record any instruments, publish any
notice, or take any other action (such as running newspaper advertisements or posting
signs) that may directly or indirectly tend to adversely affect the value of the Properties
or that may tend to deter or discourage potential bidders from participating in the public
auctions, nor shall they cause or permit anyone else to do so.

   6.  All persons occupying the Properties shall leave and vacate the
Properties permanently within 30 days of the date of this Order, each taking with them
his/her personal property (but leaving all improvements, buildings, fixtures, and
appurtenances to the Properties).  If any person fails or refuses to leave and vacate the
Properties by the time specified in this Order, the United States Marshal's Office, alone,
is authorized to take whatever action it deems appropriate to remove such person from

the premises, whether or not the sale of such Properties is being conducted by a PALS. If any person fails or refuses to remove his or her personal property from the Properties by the time specified herein, the personal property remaining on the Properties thereafter is deemed forfeited and abandoned, and the United States Marshal's Office is authorized to remove it and to dispose of it in any manner it deems appropriate, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the court for further distribution.

7. The proceeds arising from sales are to be paid to the Clerk of the Court for the United States District Court for the District of Colorado and applied as far as they shall be sufficient to the following items, in the order specified:

i. To the United States Marshal or the PALS (whichever person conducted the sale as arranged by the United States) for the costs of the sale;

ii. To all taxes unpaid and matured that are owed to (county, borough or school district) for real property taxes on the Properties;

iii. As to any remaining sale proceeds generated from sale of the Sedalia Property (after payment of items listed in paragraph 7(i) and (ii), above, as allocable to the Sedalia Property), to all principal and interest owed by Defendant Kalevik under a deed of trust dated December 23, 1986 and recorded January 13, 1987, and reasonable attorneys fees incurred by Alliance (now known as EverHome Mortgage), up to, but not in excess of $1,000, as set forth in the "Stipulation Between the United States of America and Alliance Mortgage Company" filed with the court on March 12, 2004 (doc. # 60); with the remainder to be paid over to the Trustee in *In re Kalevik*, No. 05-51595-SBB (Bankr. Col.), David E. Lewis, in accordance with the paragraph 3(b) of the Stipulation

25

and Order entered in that case on March 12, 2007 (*See* docs. # 118, # 118-2, # 118-3) and without prejudice of the right of Alliance to seek any additional amounts due under the deed of trust, mentioned above, as limited by the March 12, 2004 Stipulation (doc. # 60);

      iv.    As to any remaining sale proceeds generated from sale of the Englewood Property (after payment of items listed in paragraph 7(i) and (ii), above, as allocable to the Englewood Property), to the Trustee in *In re Kalevik*, No. 05-51595-SBB (Bankr. Col.), David E. Lewis, in accordance with the paragraph 3(a) of the Stipulation and Order entered in that case on March 12, 2007.  (*See* docs. # 118, # 118-2, # 118-3).

DATED at Denver, Colorado, this 29th day of June, 2007.

BY THE COURT:

    s/Craig B. Shaffer    
United States Magistrate Judge